JOURNAL ENTRY and OPINION
{¶ 1} Appellant Anthony McBooth appeals from his conviction for unlawful sexual conduct with a minor. He assigns seven errors for our review.[1]
 {¶ 2} Having reviewed the record and the legal arguments of the parties, we affirm McBooth's conviction. The apposite facts follow.
 {¶ 3} McBooth was indicted by the grand jury on one count of unlawful sexual conduct with a minor, a violation of R.C.2907.04, between the dates of October 1, 2001 and December 19, 2001. The indictment was later amended to change the dates from October 1, 2001 to March 31, 2002.
 {¶ 4} The victim's mother testified that at the time of the alleged sexual conduct, she and her four children lived with her mother and grandmother on Sophia Avenue in Cleveland The mother has four children, three girls and one boy. The victim, who was sixteen at the time of trial, is the eldest of her children.
 {¶ 5} The mother testified that in October 2001 her daughter was fifteen years old. At that time she began hearing rumors that her daughter was having a relationship with McBooth, who was thirty years old and lived down the street. The mother testified that her two youngest children played with McBooth's children. When the mother confronted her daughter regarding the relationship, she denied the rumors.
 {¶ 6} In November 2001, McBooth bought the victim's brother some clothing. The mother thought this was unusual and confronted McBooth to inquire why he was buying her son clothing. McBooth told her he bought the clothing because he liked her son. The mother than asked McBooth if he knew her eldest daughter. At first, he denied knowing her. The mother then informed him that her eldest daughter was only fifteen years old. She also told him her other daughters were only fourteen and eleven and that she did not want any of her daughters at his house. McBooth claimed he did not know any of her children except her son. The mother left thinking the rumors in the neighborhood were not true.
 {¶ 7} In December 2001, however, the mother again heard rumors about McBooth and her daughter. In an effort to get her daughter to confess, the mother told her daughter that McBooth had informed her that he had sex with her. The daughter than admitted that they had sex one time in October. As a result, the mother reported McBooth to the police and assumed her daughter's relationship with McBooth had ended.
 {¶ 8} In April of 2002, she found out her daughter was pregnant with McBooth's child. The baby was later born on November 9, 2002. The baby has McBooth's last name and McBooth is listed on the birth certificate as the father.
 {¶ 9} On cross-examination, the mother testified that McBooth also impregnated her fourteen-year-old niece. The grandmother of the niece has custody of the child. When the victim's mother found out about the pregnancy, she called 696-KIDS to have the child removed from the home.
 {¶ 10} The victim testified she became acquainted with McBooth near the end of October 2001 and would go to his house frequently to use his computer. According to the victim, she first had sexual intercourse with McBooth at the end of October 2001. At the time, the victim told McBooth she was eighteen years old.
 {¶ 11} The victim testified that she had intercourse with McBooth again at the beginning of February 2002. As a result, she became pregnant. She admitted that at the time she conceived the child, she had sexual relations with another person besides McBooth. According to the victim, McBooth helps care for the child and provides financial assistance.
 {¶ 12} The victim stated these two times were the only times she had sexual intercourse with McBooth and that she was fifteen years old both times. The victim testified the intercourse with McBooth was consensual and that she had told him she was eighteen years old. According to the victim, once McBooth found out how old she was, they never had sexual relations again. At the time of trial, the victim and her child lived with her grandmother, but the victim and baby occasionally spent the night with McBooth.
 {¶ 13} Brenda Gerardi, a forensic scientist with the Ohio Bureau of Identification and Investigation, testified regarding the DNA testing performed on the victim, her baby and McBooth to determine the paternity of the baby. According to Gerardi, the results indicated it was 99.9 percent probable that McBooth was the father of the child.
 {¶ 14} Detective Hussein testified that although the mother informed the police of the improper relationship between McBooth and her daughter in December 2001, the detective did not actually speak with McBooth about the allegations until April 2002 because she did not have McBooth's full name. When the detective questioned McBooth regarding the allegations, McBooth told her he only had sex with the girl once and that it was a mistake.
 {¶ 15} The jury found McBooth guilty as charged and also made an additional finding that the age difference between McBooth and his victim was ten years or more. He was sentenced to one year of incarceration and classified as a sexually-oriented offender.
 {¶ 16} In his first assigned error, McBooth claims the trial court erred by permitting Brenda Gerardi to testify to the paternity test results of the victim's baby because Gerardi did not personally perform the tests.
 {¶ 17} We conclude that even if the Gerardi's testimony should have been excluded, no prejudicial error occurred. Although the paternity test results proved that it was 99.9% probable that McBooth was the father of the baby, even without this evidence there was sufficient evidence of McBooth's guilt. The victim testified that she was fifteen years old when she had sexual intercourse with McBooth in February 2002 and the mother testified that she informed McBooth of the child's age in November 2001.
 {¶ 18} Therefore, even without the paternity test results there was evidence that McBooth had unlawful sexual conduct with a minor. Accordingly, any error resulting from Gerardi's testimony did not constitute reversible error.
 {¶ 19} McBooth's first assigned error is overruled.
 {¶ 20} In his second assigned error, McBooth argues the trial court erred by allowing the victim's mother to testify McBooth also had sex with her fourteen-year-old niece and that the girl became pregnant as a result. According to McBooth, this testimony constituted impermissible" other acts" testimony pursuant to Evid. R. 404(B).
 {¶ 21} On cross-examination, the victim's mother was asked by McBooth's attorney why she was no longer in contact with her own mother. She replied it was because she found out that her fourteen-year-old niece, whom she had custody of, had been impregnated by McBooth. She therefore called 696-KIDS, to have the child removed from the home, which angered her mother. As a result, they no longer speak to each other.
 {¶ 22} Since the answer was given in response to defense counsel's questioning, the invited error doctrine is applicable. The invited error doctrine prohibits a party from raising on appeal an error which the party invited or induced the trial court to make.[2] Therefore, McBooth is precluded from raising this issue on appeal.
 {¶ 23} McBooth's second assigned error is overruled.
 {¶ 24} In his third assigned error, McBooth argues he was denied his right to a fair and impartial jury when the trial court failed to declare a mistrial after a juror was in the Justice Center elevator with the prosecutor and detective, who were at the time discussing the case.
 {¶ 25} Trial courts have discretion in determining a juror's ability to be impartial.[3] As stated by this court inState v. Gray:[4]
 {¶ 26} "Where a party raises the question of outside influence or information impacting a juror the trial court must hold a hearing to determine whether the communication biased the juror. State v. Johnson (2000), 88 Ohio St.3d 95,723 N.E.2d 1054; see, also, State v. Keith (1997), 79 Ohio St.3d 514,684 N.E.2d 47. In such a case, the trial court possesses broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. Id.; Keith.
The court is not required to specifically ask whether a juror remains impartial. `A court may determine that a juror's impartiality remains unaffected based upon that juror's testimony.' State v. Sheppard (1998), 84 Ohio St.3d 230, 233,703 N.E.2d 286, citing Smith v. Phillips (1982), 455 U.S. 209,102 S.Ct. 940, 71 L.Ed.2d 78."
 {¶ 27} "The United States Constitution does not require a new trial `every time a juror has been placed in a potentially compromising situation * * * [because] it is virtually impossible to shield jurors from every conduct or influence that might theoretically affect their vote.'"[5] A mistrial should not be granted merely because some minor error or irregularity had arisen.[6]
 {¶ 28} In the instant case, there is no evidence in the record that the juror involved was tainted or in any way biased by being in the elevator with the prosecutor and detective. Immediately after the trial court was notified of the event by the prosecutor, it interviewed the juror involved. The juror informed the court that she was in the elevator with a group of people, which included the prosecutor and a detective in the case. Recognizing them, the juror stated she purposely blocked out the conversation they were having. The juror did not feel she was affected in any way by the chance interaction and felt she could be unbiased and impartial in determining the case.
 {¶ 29} Accordingly, we do not find the trial court abused its discretion by not declaring a mistrial or by not removing the juror.
 {¶ 30} McBooth's third assigned error is therefore overruled.
 {¶ 31} In his fourth assigned error, McBooth argues the trial court erred by amending the indictment to expand the time frame during which the alleged offense was committed. McBooth contends such a significant change in the indictment had to be presented to the grand jury.
 {¶ 32} McBooth's attorney failed to object to the amendment of the indictment. Therefore, we evaluate this assigned error under the plain error analysis. For an error to constitute plain error, it must be shown the outcome of the accused's trial would have been otherwise, but for the error.[7]
 {¶ 33} Crim.R. 7(D) provides in pertinent part:
 {¶ 34} "The court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 35} Thus, the trial court could amend the indictment so long as the amendment did not change "the name or identity of the crime charged."[8]
 {¶ 36} We find that the trial court properly amended the charge in accordance with Crim.R. 7(D). Here, the amendment merely changed the date of the offense. It did not alter the name or identity of the crime charged.[9] The amendment added no new language to the indictment, nor did it add any additional elements that the state was required to prove.
 {¶ 37} This court in State v. Shafer[10] addressed a similar situation where the prosecutor amended the date in the indictment to expand the date the alleged sexual conduct occurred. We held:
 {¶ 38} "[T]he grand jury concluded that probable cause existed to indict Shafer for `engaging in sexual conduct with [a victim], not his spouse, whose age at the time of said sexual conduct was under thirteen years * * *.' Shafer's argument assumes the offense date to be an essential fact, for purposes of indictment of proof, and it need not be. Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: `an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *.' An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged.
 {¶ 39} "Thus, the grand jury could have easily concluded that Shafer engaged in the conduct for which he was convicted, albeit the specific conduct may have turned out to have taken place at some later time than originally specified in the indictment, but not necessarily in any different manner or in any different place."[11]
 {¶ 40} Similarly, in the instant case, the grand jury could have easily concluded McBooth engaged in the unlawful sexual conduct, albeit at a later date. The date was not crucial to the indictment because the child was under the age of sixteen on both the original and amended date. Accordingly, McBooth's fourth assigned error is overruled.
 {¶ 41} In his fifth assigned error, McBooth argues he was denied his right to effective assistance of counsel because defense counsel failed to object to the state's amendment of the indictment and failed to move for a mistrial after the victim's mother testified to the fact that McBooth also had sex with her fourteen-year-old niece.
 {¶ 42} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington.[12] Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[13] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[14] Judicial scrutiny of a lawyer's performance must be highly deferential.[15]
 {¶ 43} Because we find the fourth assigned error is without merit, we logically conclude that McBooth's claim that his attorney was ineffective for failing to object to the amendment of the indictment, did not fall below an objective standard of representation.
 {¶ 44} We also do not find his attorney was ineffective for failing to move for a mistrial after the mother testified that McBooth also impregnated her fourteen-year-old niece. There was overwhelming evidence of McBooth's guilt in spite of this testimony. The victim testified she had sexual relations with McBooth in February 2002, when she was fifteen years old and the mother testified that she informed McBooth in November 2001 that her daughter was fifteen years old. Therefore, the mother's testimony regarding McBooth impregnating her niece was not prejudicial.
 {¶ 45} McBooth's fifth assigned error is overruled.
 {¶ 46} In his sixth and seventh assigned errors, McBooth argues his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because the state failed to prove that McBooth was aware the victim was under sixteen years old.
 {¶ 47} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[16]
 {¶ 48} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[17]
 {¶ 49} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks[18] in which the Ohio Supreme Court held:
 {¶ 50} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 51} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
 {¶ 52} "As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient."[19] Citing Thompkins, the Ohio Supreme Court explained what it considered in making this decision: "After reviewing the entire record, weighing all the evidence and all reasonable inferences drawn therefrom, and considering the credibility of the witnesses, we conclude that appellant's conviction was not against the manifest weight of the evidence."[20]
 {¶ 53} The evidence at trial indicated the victim admitted that she had sexual intercourse twice with McBooth. Once in October 2001 and once in February 2002. Although the victim claimed she told McBooth she was eighteen years old, the mother of the victim testified she informed McBooth in November 2001 that her daughter was fifteen years old.
 {¶ 54} Therefore, although the evidence was conflicting regarding whether McBooth was aware of the victim's age, the credibility of the witnesses was for the jury to discern.[21]
 {¶ 55} Accordingly, McBooth's sixth and seventh assigned errors are overruled.
 {¶ 56} The judgment is affirmed.
Judgment affirmed.
Kilbane and Karpinski, J., concur.
 APPENDIX ASSIGNMENTS OF ERROR
"I. The trial court erred in violation of Evid.R. 602, 703, 801, 802, and the Right to Confrontation and Due Process guaranteed by the Constitutions of the United States and Ohio when it admitted: (1) Testimony of an expert (a) to an opinion not based upon facts or data perceived by that expert or admitted into evidence, and (b) to inadmissible hearsay of others, concerning tests, that the expert did not conduct or observe, and the results of those tests; and (2) The report of the tests results, which is inadmissible hearsay and for which there is no foundation."
"II. Prejudicial error was committed by the admission of `other acts' testimony in violation of R.C. 2945.59, Evid.R. 404(B), and Appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
"III. The trial court denied Appellant his right to a fair and impartial jury guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution."
"IV. The trial court erred in permitting the State to amend the indictment to reflect information not presented to the grand jury."
"V. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."
"VI. The trial court erred in denying Appellant's motion for acquittal when the state failed to present sufficient evidence of criminal activity."
"VII. Appellant's convictions are against the manifest weight of the evidence."
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] See Appendix.
[2] State ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357,359; Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313.
[3] State v. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193 at P58; State v. Williams (1983) 6 Ohio St.3d 281, 288.
[4] (July 27, 2000), Cuyahoga App. No. 76170.
[5] State v. Johnson (Jan. 16, 1997), Cuyahoga App. No. 70234, quoting, State v. Phillips, 455 U.S. at 217.
[6] Johnson, supra, citing State v. Blankenship (1995),102 Ohio App.3d 534.
[7] State v. Swanson (1984), 16 Ohio App.3d 375, 377.
[8] Crim.R. 7(D); State v. O'Brien (1987), 30 Ohio St.3d 122,125-26.
[9] Accord State v. Randazzo, Cuyahoga App. No. 79667, 2002-Ohio-2250.
[10] Cuyahoga App. No. 79758; 2002-Ohio-6632.
[11] Id. at P17-18.
[12] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[13] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[14] Id. at paragraph two of syllabus.
[15] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[16] (1978), 55 Ohio St.2d 261, syllabus.
[17] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[18] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[19] State v. Thompkins (1997), 78 Ohio St.3d 380,687 N.E.2d 541, 545-546.
[20] State v. Issa (2001), 93 Ohio St.3d 49, 67.
[21] State v. Thomas, 70 Ohio St.2d 79.