[Cite as *State v. Ketchum*, 2021-Ohio-1583.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,              :

                             No. 109490

    v.                                       :

JONAH KETCHUM,                            :

    Defendant-Appellant.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; VACATED
**RELEASED AND JOURNALIZED:** May 6, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-635752-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and David Elias, Assistant Prosecuting Attorney, *for appellee.*

Milton A. Kramer Law Clinic Center, Case Western Reserve University School of Law, and Andrew S. Pollis, Supervising Attorney, and Emily Peterson, Joseph Shell and Joshua B. Rheins, Legal Interns, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Jonah Ketchum ("Ketchum") appeals his conviction after a jury found him guilty of two counts of menacing by stalking. For the reasons that follow, we reverse the decision of the trial court and vacate his conviction.

## I. Background

## A. Indictment, Bill of Particulars and Amended Indictment

{¶ 2} On January 4, 2019, a grand jury returned a four-count indictment against Ketchum. Relevant to this appeal are Counts 2 and 3, both alleging menacing by stalking.

{¶ 3} As reflected in the indictment, the grand jury found that Ketchum committed all four offenses against the victim, R.A., "on or about" October 26, 2018.

{¶ 4} Count 2 of the indictment alleged that Ketchum:

On or about October 26, 2018 * * *, by engaging in a pattern of conduct, did knowingly cause [R.A.] to believe that Jonah Ketchum will cause physical harm to [R.A.] or a family member of [R.A.] or cause mental distress to [R.A.] or a family member of [R.A.]

FURTHERMORE, the offender made a threat of physical harm to or against the victim.

Similarly, Count 3 of the indictment alleged that Ketchum:

On or about October 26, 2018 * * *, by engaging in a pattern of conduct, did knowingly cause [R.A.] to believe that Jonah Ketchum will cause physical harm to [R.A.] or a family member of [R.A.] or cause mental distress to [R.A.] or a family member of [R.A.].

FURTHERMORE, the offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person.

{¶ 5} Ketchum filed a motion for a bill of particulars which the court granted. The bill confirmed that both counts occurred "on or about October 26." As to Count 2 the of particulars specified:

> That on or about October 26, 2018, and at the location of 4103 Denison Avenue, Cleveland, OH 44109, the Defendant, Jonah Ketchum, , [sic] by engaging in a pattern of conduct, did knowingly cause [R.A.] to believe that Jonah Ketchum will cause physical harm to [R.A.] or a family member of [R.A.] or cause mental distress to [R.A.] or a family member of [R.A.] contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.
>
> FURTHERMORE, the offender made a threat of physical harm to or against the victim.

Similarly, as to Count 3 the bill of particulars specified:

> That on or about October 26, 2018, and at the location of 4103 Denison Avenue, Cleveland, OH 44109, the Defendant, Jonah Ketchum, , [sic] by engaging in a pattern of conduct, did knowingly cause [R.A.] to believe that Jonah Ketchum will cause physical harm to [R.A.] or a family member of [R.A.] or cause mental distress to [R.A.] or a family member of [R.A.] contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.
>
> FURTHERMORE, the offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person.

{¶ 6} Prior to trial, the trial court permitted the state to amend the indictment as pertaining to the offense dates for the aggravated menacing counts: the state was able to amend the offense date from the date found by the grand jury, and confirmed by the bill of particulars, i.e., "on or about" October 26, 2018, to a different date, i.e., sometime within the range of "October 26, 2018 to December 24, 2018." There was no discussion of amending the bill of particulars.

**B. Trial**

{¶ 7}   R.A. testified as to the events of October 26 as well as more broadly about her relationship with Ketchum.  She explained that her relationship with Ketchum began around June 2011 and ended around May 2015.  R.A. detailed their relationship and its dysfunction.

{¶ 8}   R.A. testified that in an unrelated 2015 case, she attempted to press charges against Ketchum after he cut one of her fingers off.  She explained that rather than follow through with the prosecution, she recanted her story.  R.A. stated that she lied to the court in the 2015 case after Ketchum threatened her.  She claimed that Ketchum told her if got "locked up" that he would "have [her] mom beat to death," that her oldest daughter's "car would blow up when she started it," and that "[her] other daughter * * * would be killed, as well."  R.A. testified that she was afraid and only lied to the court because she was in fear for her life.  During cross-examination, R.A. clarified that "[h]e did not threaten me.  He threatened to kill my — have my mother and both of my daughters killed * * * if he got time."

{¶ 9}   R.A. also testified that, on October 26, Ketchum drove to her house in his truck and wanted her to go get drinks with him.  She told him that she did not want to get drinks and to stop stalking her.  She got into his truck, took his keys from the ignition and threw them outside of the vehicle.  Ketchum punched her in the nose "very hard" and then he hit her again in the face with an unopened 24-ounce can of "Twisted Tea."  As a result of his actions, she suffered multiple broken bones in her face.

{¶ 10} R.A. clarified that during that October 26 incident "[h]e wasn't being threatening at the time. He was just drunk and wanting to go for drinks." She was unequivocal: "[h]e did not threaten me on that day." Ketchum presented evidence that during this altercation, he acted in self-defense and that R.A. injured him with a knife during the altercation.

{¶ 11} R.A. also detailed an incident sometime in the late hours of December 23 and early hours of December 24, 2018. She testified that Ketchum was drunk and wanted to come to her home. She told him "no" and explained that he responded "F you, B. I'm going to kill you." R.A. called the police and she called her neighbors and told them Ketchum threatened to kill her and burn her house down. R.A. testified that Ketchum kept calling her and saying "I'm going to kill you; I'm going to do this; I'm going to do that." She called the police again.

{¶ 12} Police arrived at R.A.'s house and were talking with her when Ketchum arrived. R.A. described Ketchum as "flying down [the street] very fast on the wrong side of the street extremely fast." Ketchum stopped and "the truck jerked back and forth." R.A. stated that the officers went to intercept Ketchum and that she went into her house. Police took Ketchum into custody.

{¶ 13} As previously stated, the jury found Ketchum guilty of both counts of menacing by stalking but was unable to reach a verdict as to the felonious assault and domestic violence counts. The trial court declared a mistrial as to counts one and four and ultimately dismissed then without prejudice on motion of the state.

## II. Assignments of Error

{¶ 14} Ketchum asserts three assignments of error:

[1.] The trial court committed plain error in permitting, and Ketchum's trial counsel was ineffective in acquiescing to, an improper amendment to the indictment.

[2.] Having acquiesced improperly to the amended indictment, Ketchum's trial counsel was ineffective for failing to move for a directed verdict on Counts 2 and 3 (menacing by stalking under R.C. 2903.22).

[3.] Alternatively, the trial court erred by sentencing Ketchum on both Counts 2 and 3 because they are allied offenses.

Our resolution of the first assignment of error is dispositive of the appeal and accordingly, we decline to address the remaining assignments of error.

## III. Analysis

{¶ 15} As stated, the jury found Ketchum guilty of two counts of menacing by stalking in violation of R.C. 2903.211(A)(1). In relevant part, R.C. 2903.211(A)(1) provides:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

R.C. 2903.211(D)(1) provides in relevant part:

"Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *.

{¶ 16} This court has observed that R.C. 2903.211 does not further specify the requisite temporal proximity for such "actions or incidents" to be "closely related in time," and that as such, is a determination for the trier of fact in the context of the

case. *See, e.g., State v. Kronenberg*, 8th Dist. Cuyahoga No. 106118, 2018-Ohio-1962, ¶ 31.

{¶ 17} Here, the grand jury indicted Ketchum with two counts of menacing by stalking both of which occurred "on or about" October 26, 2018.

> The purpose of a grand jury indictment has always been to give notice to the accused: "[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible."

*State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 10, quoting

*Horton v. State*, 85 Ohio St. 13, 19, 96 N.E. 797 (1911).

{¶ 18} The Supreme Court has explained:

> Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not *per se* impermissible or necessarily fatal to a prosecution.

*State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985); *see, e.g., State v. McBooth*, 8th Dist. Cuyahoga No. 82811, 2004-Ohio-1783, ¶ 40 ("The date was not crucial to the indictment because the child was under the age of sixteen on both the original and amended date."). To that end, this court has observed that "[t]he State's only responsibility is to present proof of offenses alleged in the indictment, *reasonably* within the time frame alleged." (Emphasis added.) *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632, ¶ 17.

{¶ 19} Nevertheless, R.C. 2941.07 permits a defendant to seek more specificity by requesting a bill of particulars that requires the state to set out "specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." A bill of particulars thus serves the "limited purpose" of "elucidate[ing] or particulariz[ing] the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). Here, the bill of particulars confirmed that the offenses occurred "on or about" October 26, 2018.

{¶ 20} Crim.R. 7(D) explains the circumstances in which an indictment or bill of particulars may be amended and in relevant part provides:

> The court may at any time before, during, or after a trial amend the indictment * * * or bill of particulars in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

{¶ 21} This court has recognized that "'[w]here one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury.'" *State v. Vitale*, 96 Ohio App.3d 695, 699, 645 N.E.2d 1277 (8th Dist.1994), quoting *State v. Headley*, 6 Ohio St.3d 475, 478-479, 453 N.E.2d 716, 720 (1983).

{¶ 22} We find *Vitale* instructive as to our disposition of this case. In *Vitale* a panel of this court found that the state impermissibly changed the identity of the crime when it amended the indictment to reflect the offenses were committed over

a range of dates rather than the single date which was presented to the grand jury. *Id.* at 699, 702. The panel observed that the issue was not whether the defendant was "surprised or prejudiced" by the amendment, but rather, "whether he was convicted on the same evidence on which he was indicted." *Id.* at 701, citing *State v. Barnecut*, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist.1988).

{¶ 23} The defendant in *Vitale* was indicted with a single theft offense. *Id.* at 697. According to the indictment, on or about June 14, 1991, the defendant obtained car repairs from the victim with the intent of not paying for them. *Id.* The bill of particulars confirmed that the offense occurred "on or about June 14, 1991, at approximately 12:00 p.m., at the location of 1869 East 79th Street in the City of Cleveland." *Id.*

{¶ 24} At a bench trial, the court heard evidence pertaining to a June 14 incident that occurred at the victim's repair shop where, subsequent to the repairs being performed, the defendant took possession of his car without paying. *Id.* at 698. The court also heard evidence of a second incident that occurred one week later: on June 21, where the defendant brought the car to the victim's house to complain about the work performed. *Id.* at 698. At that time, the defendant left the car with the victim at his house and left in a car the victim loaned him. *Id.* The defendant returned a few minutes later, reclaimed his own car and left under false pretenses. *Id.*

{¶ 25} After the state concluded its case it moved to amend the indictment to reflect that the theft offense was committed from "June 14, 1991 through June 21,

1991 inclusive." *Id.* at 699. Over objection and at the conclusion of all of the evidence, the court granted the motion and found the defendant guilty of theft occurring not on June 14 but rather on June 21. *Id.* at 699, 701.

{¶ 26} On appeal, this court found the trial court erred by allowing the state to amend the indictment, finding there to be "a grave risk that in this case the defendant was convicted by the trial court of a felony on evidence that was not presented to the grand jury." *Id.* at 699. The panel further observed:

> The indictment herein only specified the date of the offense as on or about June 14, 1991. The defense sought a bill of particulars. * * * In response, the state's bill of particulars further specified that the offense occurred "on or about June 14, 1991 at approximately 12:00 p.m., at the location of 1869 East 79th Street, in the City of Cleveland, Ohio." If the state had knowledge that the offense charged could also have occurred on June 21 at [the victim's] home, then it was obliged to so state. Since it didn't, it must be presumed that the evidence presented to the grand jury was limited to the June 14 episode identified in the state's bill of particulars and not some other date, time or place to which no reference is made.

*Id.* at 699-700.

{¶ 27} Here, a grand jury found, and the bill of particulars confirmed, that the date of the offense was "on or about" October 26, 2018. We note that neither the original indictment nor the bill of particulars made reference to any incident occurring in 2015 or on December 24, 2018. As such, for the jury to find Ketchum guilty of menacing by stalking it would have had to have found that he committed two or more qualifying actions or incidents closely related in time on or about October 26, 2018. *See* R.C. 2903.211(A)(1), (D)(1).

**{¶ 28}** However, this conclusion is simply not supported by the evidence. As to October 26,[1] the only date submitted to the grand jury, regardless of her injuries, R.A. was unequivocal: "[h]e did not threaten me on that day."

**{¶ 29}** Even if we were to assume, in spite of the evidence, that the purported events of December 24, 2018 constitute an action or incident pursuant to R.C. 2903.211(D)(1), as stated, the events of October 26 still fall short of establishing the requisite second incident. However, we need not make such an assumption as to December 24, 2018 as there is no indication that the grand jury was presented any evidence as to that date.

**{¶ 30}** Similarly, there is no indication that the grand jury considered any evidence regarding the alleged 2015 incident. However, we note that the state did not attempt to amend the indictment to include any such date.

**{¶ 31}** Regardless then, if the December 24, 2018 or the 2015 incidents were subsequently proven to the jury, the fact that neither was presented to the grand jury in the first place is fatal. *See State v. Pittman*, 8th Dist. Cuyahoga No. 68163, 1995 Ohio App. LEXIS 5115, *8 (Nov. 16, 1995) (finding materially prejudicial plain error where defendant tried for different offense than contained in indictment).

> "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For

---

[1] We disregard for the moment both Ketchum's claimed self-defense and the jury's inability to find him guilty of either felonious assault or domestic violence.

> a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."

*Vitale,* 96 Ohio App.3d at 702, quoting *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240, 254-255 (1962).

{¶ 32} We sustain the first assignment of error.

{¶ 33} Ketchum's two convictions for menacing by stalking are vacated. Any unserved portion of Ketchum's sentence including any term of postrelease control is vacated.

{¶ 34} Additionally, the trial court is ordered to correct its August 29, 2019 journal entry that states "Rule 29 granted as to Count(s) 1. Count(s) 4 is/are nolled" nunc pro tunc to reflect that the trial court dismissed Counts 1 and 4 without prejudice on motion of the state.

{¶ 35} Judgment reversed and vacated.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., CONCURS WITH SEPARATE ATTACHED OPINION;
SEAN C. GALLAGHER, J., DISSENTS WITH SEPARATE ATTACHED OPINION

MARY J. BOYLE, A.J., CONCURRING:

{¶ 36} I concur with the majority opinion, and I write separately to address the arguments raised by the dissent and the state.

{¶ 37} Although I agree with the dissent that the state can amend the date range of an indictment in most cases, the facts here are more like the unique situation in *State v. Vitale*, 96 Ohio App.3d 695, 699, 645 N.E.2d 1277 (8th Dist.1994). Amending the date range to include December 2018 added a second offense that was not originally alleged. To the contrary, the cases on which the dissent relies involve amended indictments that did not add new offenses. In *State v. Moore*, 8th Dist. Cuyahoga No. 103123, 2016-Ohio-2836, and *State v. Sayles*, 8th Dist. Cuyahoga No. 108524, 2020-Ohio-5508, the trial testimony reflected that the offenses identified in the original indictments occurred in a different time frame than as originally alleged, and the state amended the indictments to conform to the trial evidence. And in *State v. Palmer-Tesema*, 8th Dist. Cuyahoga No. 107972, 2020-Ohio-907, the amended indictment changed the method of the rape alleged in the original indictment to conform to the trial evidence, but the amendment "did

not allow the state to argue a different rape, at a different address, at a different date." *Id.* at ¶ 73.

{¶ 38} The cases on which the state relies are also distinguishable from the present case because the indictments in these cases were not amended to add a new offense that occurred after the originally alleged offense. In *State v. Buchanan*, 2017-Ohio-1361, 88 N.E.3d 686 (8th Dist.), the state amended the indictment to change the date the alleged rape occurred to correct "an inadvertent clerical error." In *State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002-Ohio-3490, the original indictment referred to menacing by stalking "on or about September 11, 2000" and "the events of a prior conviction." The amended indictment added a specific date range (April 1999 to September 11, 2000) to include the events underlying the prior conviction referenced in the original indictment. *Id.* at ¶ 11-17. In *State v. Ward*, 8th Dist. Cuyahoga No. 83664, 2004-Ohio-7010, the original indictment alleged that the offense of menacing by stalking occurred in October 2002, and the state amended the timeframe (a range between September 2002 and October 2002) to include the pattern of conduct leading to the alleged October 2002 offense.

{¶ 39} Here, the grand jury indicted Ketchum for two counts of menacing by stalking. Menacing by stalking requires the accused to engage in a "pattern of conduct," which means "two or more actions or incidents closely related in time[.]" R.C. 2903.211(A)(1) and (D)(1). Both the original indictment and the bill of particulars alleged that both counts of menacing by stalking occurred "on or about"

October 26, 2018. The only difference between the charges was that each included a different furthermore clause. When the state later amended the indictment to instead allege that the offenses occurred between October 26, 2018, and December 24, 2018, it added a second offense in December that was not originally alleged. Like in *Vitale*, the identity of the alleged crime improperly changed from an alleged event that occurred only on October 2018 to two alleged events, one of which occurred in October 2018 and the other in December 2018. *See Vitale* at ¶ 700-701, quoting *State v. Woody*, 29 Ohio App.3d 364, 365, 505 N.E.2d 646 (1986) ("Obviously, if the identity of the crime moves from events on June 14 to different events on June 21, at a different time and place, the identity of the crime has been improperly changed. Where the amendment to an indictment requires proof of an essential factual element which the original indictment did not, 'the amendment of the indictment changed the identity of the crime charged in contravention of Crim.R. 7(D).'").

{¶ 40} The dissent highlights that Ketchum was aware of the December offense because he was arrested at the scene, and the state further argues that the amendment did not cause Ketchum prejudice because he received discovery from the state with the December date. However, where the amendment changes the name or identity of the offense, the defendant need not demonstrate unfair surprise or prejudice. *See Vitale*, 96 Ohio App.3d 695, at 701, 645 N.E.2d 1277 (8th Dist.1994) ("The issue is not, as the state argues, and the trial court found, that defendant was not surprised or prejudiced by the belated amendment — the issue is whether he was convicted on the same evidence on which he was indicted."); *State*

*v. Dilley*, 47 Ohio St.3d 20, 546 N.E.2d 937 (1989) ("In general terms, whether Dilley suffered prejudice because of the amendment to the indictment has no bearing on the resolution of this case.").

{¶ 41} Accordingly, I find that amending the indictment was a plain and obvious error, and but for the erroneous amendment, the trial outcome would have been different because the state would not have been able to establish two or more actions or incidents closely related in time.

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 42} I respectfully dissent. The majority opinion represents an unnecessary departure from settled law on two different aspects of this appeal: (1) the applicable standard of review and (2) the state's ability to amend the date of an offense to a date range to conform to the evidence. Tellingly, neither the majority nor the separate concurring opinion expressly addresses the fact that Ketchum did not object to the state's oral motion to amend the dates of the two menacing by stalking counts to conform to the evidence before trial. *State v. McBooth*, 8th Dist. Cuyahoga No. 82811, 2004-Ohio-1783, ¶ 32 (failing to object to the amendment of the indictment must be reviewed under the plain error analysis). By addressing this issue without regard to the failure to object, the majority disregards the procedural deficiency that impacts the correct standard under which we review this appeal. Further, the rigid reliance on *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), creates a conflict with the multitude of cases from this district that have limited *Vitale* to the fact scenario presented therein — that the state may not

amend the indictment after presenting its case to the jury to include a new crime that occurs at a different *time and place* than is set forth in the original indictment. *Id.* at 700.

{¶ 43} In the first incident, in October 2018, Ketchum was sitting in his truck outside the victim's house. The victim had a history with Ketchum that colored the lens through which the victim interacted with Ketchum. He had assaulted her in the past, in 2015, and threatened to harm her or her family if she helped prosecute Ketchum. *State v. Erker*, 2019-Ohio-3185, 141 N.E.3d 543, ¶ 75 (8th Dist.) ("The parties' history is also relevant to establishing the elements of menacing by stalking"). On the night of the first event underlying the conviction, after Ketchum called the victim, the victim went outside and told him to leave and to stop stalking her. Although the victim conceded that Ketchum never overtly "threatened" her on the day of the October incident, she testified that she regarded him as a "dangerous human being" based on his past conduct — making any threat implicit in Ketchum's conduct in October. The victim confronted Ketchum and threw his car keys into an adjacent yard. Ketchum punched the victim repeatedly, and the first punch broke her nose.

{¶ 44} The second incident, in December 2018, included Ketchum threatening the victim with violence over the phone through a series of calls and when pounding on the door after arriving at her home. Ketchum was arrested for this conduct at the scene of the crime on the date of the December incident. The record is devoid of any indication that a warrant had been issued for Ketchum's

earlier conduct such that there could be any confusion as to why Ketchum was being arrested in December — for the menacing by stalking crime he then was committing against the victim at her home. Based on this evidence, the jury convicted Ketchum of two counts of menacing by stalking — the same two counts of menacing by stalking for which Ketchum was indicted, albeit with an extended date range applicable to both offenses.

{¶ 45} First, the procedural posture of this case must be discussed. Left unaddressed by both the majority opinion and the separate concurring opinion is the fact that Ketchum did not object to the trial court granting leave to amend the indictment under Crim.R. 7(D). Tr. 10:9-18 (defense counsel indicating that there is "no objection" to the state's requested amendment to include the date range). Ketchum arguably waived his right to challenge the amendment after trial. *State v. Brooks*, 75 Ohio St.3d 148, 159, 1996-Ohio-134, 661 N.E.2d 1030. At the least, under well-settled law, however, he has forfeited all but plain error. *State v. Rogers*, 143 Ohio St. 3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3; *McBooth*, 8th Dist. Cuyahoga No. 82811, 2004-Ohio-1783, at ¶ 32. Forfeited error "is not reversible error unless it affected the outcome of the proceeding." *Rogers* at ¶ 3. And even if an offender demonstrates that the trial court committed plain error that affected the proceeding, "an appellate court is not required to correct it." *Id.* at ¶ 23. Plain error is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d

21, 27, 759 N.E.2d 1240 (2002). The defendant bears the burden to demonstrate plain error. *Rogers* at ¶ 3.

{¶ 46} There is no error in this case, much less error that constitutes plain error under Ohio law. This is especially apparent from the fact that Ketchum has not even asked for us to reverse under the plain error review standard and instead solely focuses on the merits of the amendment irrespective of his failure to object. This alone dooms his appeal since it is his burden to demonstrate plain error. *Rogers* at ¶ 3; App.R. 16(A)(7). Any decision to reverse "ignores the constraints of appellate review" because absent such an argument, Ketchum has failed to meet his burden of demonstrating plain error. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, 86 N.E.3d 279, ¶ 17 ("it is not the role of this court to create out of whole cloth the case we want to resolve. We review the issues that are raised by the appellant."). Since Ketchum has not even claimed the error rises to the level of plain error or provided any analysis to support such a claim, our inquiry should have come to an end. App.R. 16(A)(7); *McBooth* at ¶ 32. By ignoring controlling case law, the majority's approach of addressing the merits of Ketchum's argument creates an unnecessary conflict with unambiguous law in Ohio and this district. It is not this panel's obligation or even its role to consider arguments not raised by the defendant.[2]

---

[2] To be fair, Ketchum acknowledges that the standard should be plain error in the context of presenting the ineffective assistance of counsel argument in the alternative to finding error on the merits of the amendment issue, but omits the manifest injustice standard from that discussion. As the Ohio Supreme Court has continually warned, courts are only "to notice plain error 'with the utmost caution, under exceptional

{¶ 47} Nevertheless, both the majority and the separate concurring opinions' rigid application of *Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994), which according to them prevents the state from amending the date range of the indictment to conform to the facts, is contrary to the vast majority of cases that have rejected such an approach. *State v. Moore*, 8th Dist. Cuyahoga No. 103123, 2016-Ohio-2836, ¶ 27 (amending the date range of the indictment originally stated as being between November 1, 2010, and February 28, 2011, to conform to the evidence that the crimes occurred between January 1, 2009, through November 30, 2012, did not violate Crim.R. 7(D)); *State v. Sayles*, 8th Dist. Cuyahoga No. 108524, 2020-Ohio-5508, ¶ 24 (amending the date range of December 3, 2015 – December 2, 2016, to January 1, 2011 – June 1, 2012, was permissible under Crim.R. 7(D)); *see also State v. Palmer-Tesema*, 8th Dist. Cuyahoga No. 107972, 2020-Ohio-907, ¶ 67 (amending the nature of the rape offense from digital penetration to vaginal penetration did not change the identity of the offense).

{¶ 48} As other panels from this court have made clear, *Vitale* involved a unique situation in which the state amended the indictment, following its

circumstances and only to prevent a manifest miscarriage of justice.'" *Rogers* at ¶ 23, citing *Barnes*, 94 Ohio St.3d at 27, and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Regardless, acknowledging the standard and providing an argument in support of that standard are two separate matters. Ketchum provides no analysis in support of the claim that the error was plain, and neither the majority nor the separate concur reviewed this appeal under the ineffective assistance of counsel discussion. Appellate courts are not advocates and cannot sua sponte supplant deficient arguments.

presentation of evidence at trial, to include two dates for the offense that occurred at different addresses, but the jury acquitted the offender of the offenses relating to the date and place included in the original indictment. *State v. Cummings*, 8th Dist. Cuyahoga No. 100657, 2014-Ohio-3717, ¶ 22, citing *Vitale*. That factual circumstance does not exist in this case, in which Ketchum was convicted for his conduct on both dates in question that occurred at the same address and against the same victim, with Ketchum being arrested at the scene of the crime on the date of the December incident. *Vitale* is not applicable, and any reliance thereon creates an unnecessary conflict with the vast body of case law that has recognized the limitations of the case. *See, e.g.*, *Sayles*, 8th Dist. Cuyahoga No. 108524, 2020-Ohio-5508, ¶ 28.

{¶ 49} Amending the date for the two menacing by stalking counts from a single date to a range in order to conform to the evidence does not violate Crim.R. 7(D) or the law of this district. *See, e.g., Moore* at ¶ 27; *Sayles* at ¶ 24. This is especially apparent in light of the fact that Ketchum was aware of the two incidents, that he was arrested at the scene of the December crime, and that the nature of each offense, which was against the same victim and at the same location, was identical. The nature and identity of the menacing by stalking offenses were not altered in any manner whatsoever. Accordingly, Ketchum's claim that it was error to permit "an improper amendment" to the indictment, is contrary to the vast majority of cases that have permitted such an amendment before trial. It is unclear how Ketchum is more deserving of the invocation of plain error than any other offender facing a date-

only amendment to the indictment who has been denied the same — a point evidently not lost on Ketchum in this appeal given his failure to analyze the plain error review standard altogether.

{¶ 50} And finally, the separate concurring opinion posits that the case authority that unambiguously permits date and time amendments, applies only if a "new offense" is not created by amending the date range. According to the concurring opinion, amending the date range in this case created a "new offense" that occurred in December and was not part of the original indictment. This district has always rejected this type of argument.

{¶ 51} Amending indictments under Crim.R. 7(D) always involves including dates that were not included in the original indictment and could always be construed as "adding a new offense" to the indictment in the manner in which the concurring opinion suggests. In *Sayles*, 8th Dist. Cuyahoga No. 108524, 2020-Ohio-5508, ¶ 24, for example, the trial court amended the dates of the indictment at trial, shifting the date range indicated in the indictment to a full year earlier to conform to the evidence at trial. Under the separate concurring opinion's theory, that amendment in effect created a new offense that was not presented in the original indictment since the dates differed. This "new offense" theory has never been adopted by this court, and in fact, panels have rejected the argument wholesale. *Id.* at ¶ 25. *Sayles*, in particular, expressly rejected the argument that defense counsel was ineffective for not objecting to the date amendments based on the defendant's claim that the amendments created new offenses not considered by the

grand jury by shifting the date range to an earlier period during which the child victim was of tender years. *Id.*

{¶ 52} The only difference between *Sayles* and the current matter is that the former involved a sex offense, and the latter a menacing by stalking offense. The separate concurring opinion thus implicitly opines that menacing by stalking includes time and date as an essential element of the offense, a notion that has not given rise to an appellate issue in the past. *See, e.g., Erker*, 2019-Ohio-3185, 141 N.E.3d 543, ¶ 3 (8th Dist.), fn. 1. In *Erker*, the panel approvingly noted that the date of the menacing by stalking count was amended on the first day of trial, from having alleged to have occurred on or about June 1, 2016, to having occurred on March 16, 2018. In light of the fact that the majority's sua sponte review for plain error is limited to determining whether a manifest injustice occurred, one can only speculate as to why the "manifest injustice" was left unchecked in *Erker* given the majority's conclusion herein.

{¶ 53} Regardless, Ohio law does not draw a distinction between sex offenses and especially that of menacing by stalking for Crim.R. 7(D) purposes. *State v. Ward*, 8th Dist. Cuyahoga No. 83664, 2004-Ohio-7010, ¶ 6. In *Ward*, the panel concluded that expanding the time frame for the menacing by stalking conduct did not violate Crim.R. 7(D) when the conduct and the victim remained unchanged. According to *Ward*, an amendment expanding the time frame does not change the name or identity of the crime for which the defendant was charged and, therefore, is permissible under Crim.R. 7(D). The majority's opinion and the separate

concurring opinion as well if ever adopted as persuasive authority create a conflict with the black-letter law pronounced in *Ward* and *Sayles*— that expanding the time frame for menacing by stalking is a permissible amendment and that shifting the date of an offense does not create a "new offense." Both *Ward* and *Sayles* are in harmony with Ohio law.

{¶ 54} Generally, "the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges." *State v. Ray*, 8th Dist. Cuyahoga No. 89264, 2007-Ohio-6836, ¶ 24, citing *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). In *Ray*, the panel concluded that the amendment of the date of the receiving stolen property offense from April 16, 2003 to April 16, 2005, was appropriate under Crim.R. 7(D) because date and time are generally not essential elements of any offense, much less a theft offense.

{¶ 55} In addition, R.C. 2941.08 unambiguously provides that "[a]n indictment or information is not made invalid, and the trial, judgment, or other proceedings stayed, arrested or affected: * * * (C) For stating the time imperfectly; * * *." It is undisputed that the state imperfectly stated the time frame in the original indictment, but neither R.C. 2941.08 nor *Sellards* precludes the amending of dates to conform to evidence. *See generally Ray*; *State v. Jones*, 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 16 (amendment of the date for the robbery count was permitted under Crim.R. 7(D)). The majority's decision to the contrary does nothing but sow the seeds of confusion as to the black-letter law in this district.

{¶ 56} I disagree with the majority's decision to reverse both convictions under rationales that unnecessarily conflict with the case authority from not only this district, but also with binding authority from the Ohio Supreme Court. I therefore must respectfully dissent. There is no error, plain or otherwise, in granting leave to amend the date range of the menacing by stalking offenses, and I would find no merit to the remainder of Ketchum's claims left unaddressed by this majority.