[Cite as *State v. Shurelds*, 2025-Ohio-2638.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

BREANNA N. SHURELDS,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-39



OPINION AND
JUDGMENT ENTRY


Appeal from Allen County Common Pleas Court
Trial Court No. CR2024 0031

Judgment Affirmed

Date of Decision:  July 28, 2025


APPEARANCES:

    *William T. Cramer* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Breanna N. Shurelds ("Shurelds"), appeals the May 30, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On the morning of March 6, 2023, Shurelds entered the home of her brother's former girlfriend after seeing another man, Eric, enter the residence. Even though the former girlfriend was not home at the time, Shurelds entered the residence through an unlocked door. Shurelds testified that she and Eric had a "verbal altercation" and she "smacked" Eric's phone out of his hand. (May 29, 2024 Tr. at 243). Eric testified that Shurelds attempted to choke him.

{¶3} Video and audio footage from security cameras outside of the home shows Shurelds pushing Eric out of the residence and yelling obscenities at him. A few minutes later, security-camera footage shows Shurelds and an accomplice removing items from the home. The items taken from the home belonged to Eric. Despite requests made by the former girlfriend, the items were never returned. Approximately six months later, the former girlfriend and Eric reported the incident to police.

{¶4} On February 15, 2024, the Allen County Grand Jury indicted Shurelds on Count One of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony; and Count Two of theft in violation of R.C. 2913.02(A)(1), (B)(2), a

fifth-degree felony. On March 21, 2024, Shurelds entered written pleas of not guilty.

{¶5} The case proceeded to a two-day jury trial on May 28, 2024. On May 29, 2024, the jury found Shurelds guilty of both counts in the indictment. The trial court proceeded directly to sentencing and sentenced Shurelds to an indefinite term of five to seven and one-half years in prison on Count One, and ten months in prison on Count Two. The trial court then ordered the sentences to be served concurrently for an aggregate prison term of five to seven and one-half years.

{¶6} Shurelds filed her notice of appeal on June 3, 2024. She raises three assignments of error for our review. For ease of discussion, we will address all three assignments of error together.

**First Assignment of Error**

**Appellant's state and federal due process rights were violated by a conviction for aggravated burglary that was not supported by sufficient evidence of a trespass.**

**Second Assignment of Error**

**The weight of the evidence on the issue of trespass did not support a conviction for aggravated burglary.**

**Third Assignment of Error**

**The weight of the evidence on the issue of physical harm did not support a conviction for aggravated burglary.**

{¶7} On appeal, Shurelds argues that her aggravated-burglary conviction is based on insufficient evidence and is against the manifest weight of the evidence. Shurelds does not challenge her theft conviction.

*Standard of Review*

{¶8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

{¶9} In contrast, when determining whether a verdict is against the manifest weight of the evidence, a reviewing court sits as a "thirteenth juror" and examines

the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Nonetheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence ""weighs heavily against the conviction,"" should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119, quoting *Thompkins* at 387, quoting *Martin* at 175.

*Analysis*

{¶10} Shurelds was convicted of aggravated burglary in violation of R.C. 2911.11(A), which provides, in relevant part,

> No person, by force, stealth, or deception, shall trespass in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

R.C. 2911.11(A)(1).

{¶11} In her first assignment of error, Shurelds argues that the State presented insufficient evidence to establish that she trespassed into the home of her brother's former girlfriend. Shurelds contends that she did not trespass since she "had permission [to] enter the home unannounced if the door was unlocked." (Appellant's Brief at 12).

{¶12} A person trespasses when he or she, without privilege to do so, knowingly enters or remains on the land or premises of another. R.C. 2911.21(A)(1). "Privilege" means "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶13} Based on our review of the record, we conclude that the State presented sufficient evidence to show that Shurelds trespassed into the home of her brother's former girlfriend. Specifically, the State presented the testimony of the former girlfriend who stated that that she did not give Shurelds permission to enter her home on the morning of the incident. *See State v. Johnson*, 1999 WL 152850, *7 (3d Dist. Feb. 25, 1999) (concluding that the prosecution presented sufficient evidence to show that the appellant was a trespasser when the homeowner testified that the appellant entered her home without permission).

{¶14} The former girlfriend testified that it was common for Shurelds to be at her home when she and Shurelds's brother were dating. When asked if Shurelds could enter the home unannounced, the former girlfriend answered, "Not really no." (May 28, 2024 Tr. at 119). The former girlfriend explained, "If I knew she was coming I would leave the door unlocked yeah but typically I left my door locked." (*Id.*). The relationship between Shurelds's brother and the former girlfriend ended two weeks prior to the incident.

{¶15} Eric also testified at trial. Eric testified that he was alone in the home on the morning of the incident when Shurelds "just walked in" without knocking and approached him "aggressively." (*Id.* at 174). Eric further testified that Shurelds placed both hands around his neck and attempted to choke him. Eric stated that he felt pressure during the attempted choking and both sides of his neck sustained "scratches." (*Id.* at 178).

{¶16} In addition to the testimonial evidence, the State played security-camera footage showing Shurelds entering the home through a side door at 10:22 a.m. Less than one minute later, Shurelds's accomplice entered the home through the same side door. There is no footage of what transpired inside the home. At 10:25 a.m., Shurelds is seen pushing Eric out of the home through the side door and yelling obscenities at him. Approximately six minutes later, at 10:31 a.m., security-camera footage from the front door shows Shurelds and her accomplice removing items from the home. The footage ends at 10:36 a.m. with Shurelds screaming

obscenities into the camera and then "rip[ing]" the camera from the home. (May 28, 2024 Tr. at 139).

{¶17} Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Shurelds trespassed into the home of her brother's former girlfriend. The State presented sufficient evidence to show that Shurelds did not have permission to enter the home on the morning of the incident and that she trespassed. Accordingly, Shurelds aggravated-burglary conviction is based on sufficient evidence.

{¶18} In her second assignment of error, Shurelds argues that her aggravated-burglary conviction is against the manifest weight of the evidence because the greater weight of the evidence shows that she had "general permission" to enter the home. (Appellant's Brief at 13). Shurelds asserts that she "had no reason to believe that [her brother's former girlfriend] had revoked" the privilege. (*Id.*).

{¶19} Shurelds testified in her own defense at trial. Shurelds testified that she knew that her brother and the former girlfriend "were going through something" and that her brother believed that the former girlfriend "was cheating on him." (May 29, 2024 Tr. at 242). On the morning of the incident, Shurelds and her accomplice were driving by the former girlfriend's home and saw "someone going in." (*Id.* at 240). Shurelds entered the home and asked Eric, "What's up? What you doin[g] here?" (*Id.* at 243). Shurelds testified that she and Eric engaged in a "verbal

altercation" and she "smacked" Eric's phone out of his hand. (*Id.*). Shurelds denied attempting to choke Eric. Shurelds admitted to pushing Eric out of the home. With respect to the items taken from the home, Shurelds testified that she believed the items belonged to her brother.

{¶20} Shurelds's accomplice also testified for the defense at trial. The accomplice testified that she entered the home "a minute or two, maybe three" after Shurelds because she "didn't know if they were fighting." (*Id.* at 219). The accomplice further testified that, after entering the home, she saw Shurelds and Eric "arguing." (*Id.*). The accomplice stated, "Come on [Shurelds]. Let him go. Let's go." (*Id.*). The accomplice testified that Shurelds "smack[ed]" Eric's phone out of his hand and then "shoved him out the door." (*Id.* at 221).

{¶21} Upon review of the record, we conclude that the greater weight of the evidence demonstrates that Shurelds did not have permission to enter the home on the morning of the incident. First, the former girlfriend testified that she did not give Shurelds permission to enter her home. Second, even assuming that Shurelds had a privilege to enter the home when her brother and the former girlfriend were in a relationship, a rational trier of fact could infer from the evidence that such privilege terminated when the relationship ended. Furthermore, any privilege to be on the premises terminated when Shurelds attempted to choke Eric. *See State v. Canankamp,* 2023-Ohio-43, ¶ 33-34 (3d Dist.) (concluding that the privilege of an invited guest to be on the premises is revoked if she commits a violent act).

**{¶22}** In her third assignment of error, Shurelds argues her aggravated-burglary conviction is against the manifest weight of the evidence on the issue of physical harm since "there was no objective evidence of the scratches, only [Eric's] testimony." (Appellant's Brief at 14).

**{¶23}** Aggravated burglary, as charged in this case, requires proof that "[t]he offender inflict[ed], or attempt[ed] or threaten[ed] to inflict physical harm on another." R.C. 2911.11(A)(1). "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶24}** Here, the jury heard testimony from Eric that—after entering the home without knocking—Shurelds approached him aggressively, placed both hands around his neck, and attempted to choke him. Eric testified that he felt pressure and both sides of his neck were scratched. In contrast, Shurelds testified that she did not "try to choke [Eric]." (May 29, 2024 Tr. at 244).

**{¶25}** It is within the province of the jury to determine the credibility of the witnesses. In considering the foregoing evidence, "the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial." *State v. Erickson*, 2015-Ohio-2086, ¶ 42 (12th Dist.). Indeed, it was well within the province of the jury to determine Eric's credibility in recounting what transpired on the day of the incident, including the prerogative to find his version of events to be more credible than Shurelds's denial. Accordingly, we cannot conclude that the

jury clearly lost its way and created such a manifest miscarriage of justice that Shurelds's aggravated-burglary conviction must be reversed and a new trial ordered. *See Canankamp,* 2023-Ohio-43, at ¶ 42-43 (3d Dist.) (stating that when the parties present conflicting testimony at trial, it is within the province of the jury to resolve conflicts in the evidence). Consequently, Shurelds's aggravated-burglary conviction is not against the manifest weight of the evidence.

{¶26} Shurelds's first, second, and third assignments of error are overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK, P.J. and MILLER, J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

 

William R. Zimmerman, Judge

 

Juergen A. Waldick, Judge

 

Mark C. Miller, Judge

DATED:
/hls