JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his convictions for aggravated burglary,
 {¶ 2} a first degree felony, in violation of R.C. 2911.11, and felonious assault, a second degree felony, in violation of R.C. 2903.11, which carried a firearm specification.[1]
 {¶ 3} On September 15, 2002, Katrice De Brossard, seven months pregnant, entertained family and friends who had come to her home to watch a boxing match on television. Defendant, De Brossard's ex-boyfriend, had asked to come over to watch the match, but De Brossard said no.
 {¶ 4} After the match, everyone left except De Brossard's cousin, Tawanda Freeman, and mother, Kathy Scott. At approximately 1:00 a.m., De Brossard heard someone yelling and pounding on her door and windows.
 {¶ 5} Defendant kicked in a door and gained entry to the house. Once inside, he chased De Brossard until she fell. After she was taken to the hospital, defendant returned to the house and found Scott, alone.
 {¶ 6} Defendant was armed with a gun. He threatened to kill the mother several times and also punched her in the face, but she escaped. Defendant was arrested and tried by the bench. The court found defendant guilty of committing aggravated burglary against De Brossard and felonious assault against her mother, with a firearm specification. In a timely appeal, defendant presents the following assignments of error:
 {¶ 7} "I. Defendant's convictions were contrary to the manifest weight of the evidence."
 {¶ 8} Defendant argues that the state's evidence against him for aggravated burglary and felonious assault are insufficient and his convictions are against the manifest weight of the evidence.
 {¶ 9} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982) 457 U.S. 31, at 42.
 {¶ 10} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, 785 N.E.2d 439, at ¶ 54, citing Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 11} In the case at bar, defendant was convicted of R.C.2911.11(A)(1), which defines the offense of aggravated burglary. The statute, in part, provides:
 {¶ 12} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
(1) the offender inflicts, or attempts or threatens to inflict physical harm on another * * *."
 {¶ 13} Aggravated burglary does not require actual physical harm. It is sufficient if physical harm was attempted or threatened. Moreover, a defendant may form the purpose to commit a criminal offense at any point during the trespass, and the trier of fact can infer that intent from a forcible entry. Statev. Fontes (2000), 87 Ohio St.3d 527, syllabus.
 {¶ 14} In order for the state to prove defendant committed aggravated burglary it had to show that he intended to forcefully trespass into De Brossard's home and, then, that he had the purpose, at some point during that trespass, to inflict, or attempt or threaten to inflict physical harm upon her. The state is not required to show that defendant physically harmed De Brossard. See, State v. Mitchell, (Sept. 7, 1995), Cuyahoga App. No. 56575, Counsel Corrected Nunc Pro Tunc September 15, 1995; State v. Frazier (1979), 58 Ohio St.2d 253,389 N.E.2d 1118.
 {¶ 15} On September 15, 2002, De Brossard testified that defendant forced his way into the house by kicking in a door. Inside, defendant chased De Brossard, pregnant at the time, until she fell on her stomach as she tried to escape up a flight of stairs.
 {¶ 16} Freeman testified that defendant was "grabbing her and shaking her and pushing her up against the wall." Tr. 256. When police arrived, defendant fled. De Brossard was taken to a local hospital because she was having pain in her stomach and could not feel her baby moving. Freeman accompanied her to the hospital while her mother remained at the house. Freeman supports De Brossard's testimony.
 {¶ 17} On this record, reasonable minds could conclude that defendant forcefully trespassed into De Brossard's home and, then, that he had the purpose, at some point during that trespass, to inflict, or attempt or threaten to inflict physical harm upon her. De Brossard's testimony, if believed, is sufficient to demonstrate each and every element of aggravated burglary, including the threat of physical harm, and sufficient to convince the average mind of defendant's guilt beyond a reasonable doubt.
 {¶ 18} Defendant was also convicted of felonious assault, defined in R.C. 2903.11 as follows: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2901.01(A)(5) defines "[s]erious physical harm to persons" as any of the following:
 {¶ 19} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 20} (b) Any physical harm that carries a substantial risk of death;
 {¶ 21} (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 22} (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 23} (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 24} Moreover, "the act of pointing a deadly weapon at another and threatening to kill that individual is sufficient evidence to establish the offense of felonious assault." Statev. Green (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, syllabus.
 {¶ 25} The mother testified that, while she was alone in the house, defendant returned and pointed a gun at her saying, "bitch, I ought to kill you." Tr. 189. She further testified that defendant hit her in the face, knocked her to the floor, and then hit her again in the face. She stated that defendant then dragged her out of the house with the gun pointed at her head.
 {¶ 26} As defendant was attempting to force the mother into the car, a "[b]lue, four-door" (Tr. 191), she escaped and started walking away. The mother testified as follows:
 {¶ 27} "A: * * * I'm walking, I'm in the middle of the street, up under the street light on Wade Park. He runs behind me.
 {¶ 28} Q: He has your shirt; you don't have it on anymore?
 {¶ 29} A: No.
 {¶ 30} Q: You take off?
 {¶ 31} A: Yeah.
 {¶ 32} Q: Go ahead.
 {¶ 33} A: You think you're funny; you think you're funny. I ought to kill you now. I ought to kill you now. I ain't going through this mother fucking shit;; I'm tired of this. I'm tired of this.
 {¶ 34} I grabbed his arm right here. I said, I don't know about you, but my God is good to me and this is not my fate to die. You got to do what you got to do. I proceeded to go on back. I'm in front of Wade Park. There is a dumpster over here in the duplex where my daughter live. I'm going all the way around, back by the dumpster. I hear the gun click one time. I never turned around, so I can't tell you which way he went, because I don't know.
 {¶ 35} Q: You heard the gun click?
 {¶ 36} A: Yes."
 {¶ 37} Tr. 192-193. The mother further testified that just after she heard the gun click, police arrived. During trial, she identified the gun defendant held to her head. She also identified the car defendant tried to force her into, and she identified one of two black, red, and white gloves defendant was wearing during her attack.
 {¶ 38} This testimony provides ample evidence upon which the trier of fact could reasonably find, at the very least, that defendant threatened to physically harm the mother. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence. Defendant's first assignment of error is overruled.
 {¶ 39} "II. The court erred in finding the defendant-appellant guilty of the firearm specification where there was no evidentiary proof that the firearm was operable or could readily be made operable."
 {¶ 40} Defendant contends the state did not prove that the gun was operable. Whether the loaded firearm found in defendant's car was operable is determined by R.C. 2923.11. The statute defines a "firearm" as:
 {¶ 41} "Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can be readily rendered operable."
 {¶ 42} See, State v. Axson, (May 1, 2003), Cuyahoga App. No. 81231. In the case at bar, defendant also argues that the gun Scott identified was not operable because it had a gerryrigged piece of metal holding it in place. On the other hand, Detective Nate Willson of the Cleveland police department testified the gun found in defendant's car fired a round of ammunition during police testing. Police testing proved, therefore, the firearm was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Under the statute, defendant's gun was operable.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Celebrezze, Jr., J., concur.
[1] Defendant was originally charged in a six-count indictment for the following offenses: Counts One and Two charged the offense of aggravated burglary (2911.11) with firearm specification, Counts Three and Four charged felonious assault (2903.11) with firearm specification, and Count Five charged kidnapping (2905.01), and Count Six charged unauthorized use of a motor vehicle (2913.03). Before defendant's bench trial commenced, the state deleted the firearm specifications from Counts One and Three and it nolled the remaining counts of the indictment.