JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Damone Walker ("defendant"), appeals from the judgment entered pursuant to a bench trial finding him guilty of aggravated burglary and aggravated menacing. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On October 21, 2005, defendant was indicted by the Cuyahoga County Grand Jury for one count of aggravated burglary, in violation of R.C. 2911.11 and one count of aggravated menacing, in violation of R.C.2903.21. On June 14, 2006, a bench trial began.
 {¶ 3} At trial, the victim gave the following testimony: She was 12 years old at the time of the incident. On the morning of August 9, 2005, she was asleep on the couch inside her home at around 8:00 a.m. Her mother was at work. She woke up and noticed a man, later identified as the defendant, standing inside the house. She asked him who he was and how he got inside. Defendant sat down across from her and told her that he was running from the police. He also began asking her questions, such as name and age.
 {¶ 4} The victim realized that she recognized the defendant, since he used to live next door to her and she had seen him on the porch with a little girl. She asked him where the little girl was. The defendant replied that she was in school. The defendant asked the victim if she was scared and she started to cry and said "yes." The defendant told her that he would not touch her because he did not want to get in *Page 4 
trouble. Then, the defendant started to ask her some sexually explicit questions, including whether she had ever had sex, engaged in oral sex, or seen a penis. The defendant then stood up and began to unbuckle his pants. The victim covered her eyes, started crying, and told the defendant to leave. Defendant began walking toward the victim and she told him to leave again. Finally, the defendant left.
 {¶ 5} As soon as the defendant left, the victim locked the door and windows. She then called her mother and father. Shortly thereafter, her parents came home and called the police. After defendant left, the victim realized that her diamond necklace, which had been on the couch near to where defendant was sitting, was missing. The victim testified that she felt violated, sick, and scared because she thought defendant was going to touch her. The victim identified the defendant at trial and also testified that she identified defendant in a photo array two weeks after the incident.
 {¶ 6} Next, the State called Florence Talley ("Ms. Talley"), the victim's mother. She testified that she received a phone call from the victim on the morning of August 9, 2005, during which the victim was crying and screaming that she needed to come home because someone broke into the house. Ms. Talley dropped the phone and raced home. When she got home, the victim told her that the ex-neighbor had broken into the house. Ms. Talley told her daughter to write everything down while they waited for the police to arrive. *Page 5 
 {¶ 7} The State also called Detective Raymond Diaz of the Cleveland Police Department. Det. Diaz testified that he interviewed the victim and the victim's mother about two weeks after the incident and that the victim identified the defendant from a photo array as the male who entered the house. He testified that he requested a female detective to assist in the interview because the victim was extremely upset and uncomfortable with him.
 {¶ 8} For the defense, the defendant testified on his own behalf. He testified that he had a prior criminal record but was not wanted by the police on August 9, 2005. He testified that he lived next door to the victim for several months and recognized her. He denied entering or being inside the victim's home and denied stealing anything from her. Defendant testified that he could not understand why the victim was saying such things.
 {¶ 9} On June 14, 2006, defendant was found guilty of aggravated burglary and aggravated menacing.
 {¶ 10} Defendant timely appeals and raises the following sole assignment of error for our review.
 {¶ 11} "I. Appellant's convictions for aggravated burglary and aggravated menacing are against the manifest weight of the evidence.
 {¶ 12} In his sole assignment of error, defendant argues that his convictions for aggravated burglary and aggravated menacing are against the manifest weight of the evidence. Specifically, with regard to the aggravated menacing conviction, *Page 6 
defendant contends that there is no evidence that he touched, attempted to touch, threatened, or attempted to threaten the victim. With regard to the aggravated burglary conviction, defendant contends that there is no evidence that the victim suffered any physical harm.
 {¶ 13} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 14} Here, the evidence does not weigh heavily against defendant's convictions. Defendant was convicted of aggravated menacing under R.C.2903.21, which provides, in pertinent part, that "no person shall knowingly cause another to believe that the offender will cause serious physical harm to * * * the other person." Aggravated menacing does not require that the offender be able to carry out his threat or even believe himself capable of carrying it out. It is sufficient if the offender knowingly causes the victim to believe the offender will carry his threat into *Page 7 
execution.[1] State v. Charlton, Trumbull App. No. 2006-T-0079,2007-Ohio-2051. The gist of the offense is the victim's reasonable belief that serious physical harm was about to befall her. Id. See, also, State v. Schwartz (1991), 77 Ohio App.3d 484, 486.
 {¶ 15} Here, the victim testified that she woke up to find a man inside her house. She testified that defendant asked her if she ever had her "pussy licked" and if she had ever "had sex before." The victim testified that the defendant asked her if she had ever "seen a big dick before," stood up, and began unbuckling her pants. The victim testified that she was extremely upset and crying because she thought the defendant was going to touch her. The victim's mother testified that she received a phone call from the victim, who was crying and screaming. At trial, defendant denied being inside the house.
 {¶ 16} In its role as fact finder, the trial court determined that defendant was inside the house and that his lewd actions and questions caused the victim to believe that defendant would cause her serious physical harm. On issues of witness credibility, a reviewing court will not substitute its judgment for that of the trier of fact unless it is patently apparent that the fact finder lost its way. State v.McCallister, Montgomery App. No. 21637, 2007-Ohio-576, 19. Based on our review of the trial *Page 8 
transcript, we conclude that the trial court reasonably could have elected to believe the State's witnesses and to disbelieve defendant. The fact that defendant did not actually touch the victim does not vitiate the reasonable belief held by her that defendant was about to cause her serious physical harm. Accordingly, we cannot say the trial court lost its way in finding defendant guilty of aggravated menacing.
 {¶ 17} We reach the same conclusion with regard to the aggravated burglary conviction. Defendant was convicted under R.C. 2911.11, which provides, in pertinent part, that "no person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person is present, with purpose to commit therein any criminal offense * * * and inflicts, or attempts or threatens to inflict physical harm on another." Similar to the argument raised above, defendant asserts that the victim was not physically touched, threatened, or harmed in any way. Defendant also contends that the victim did not receive medical or psychological treatment after the offense.
 {¶ 18} In order for the defendant to be found guilty of aggravated burglary, the State must show that the defendant intended to forcefully trespass into the victim's home and, then, that he had the purpose, at some point during that trespass, to inflict, or attempt to threaten to inflict physical harm upon the victim. State v. Dobbins, Cuyahoga App. No. 84155, 2004-Ohio-5738. Aggravated burglary does not require actual physical harm and the victim need not show that she was actually *Page 9 
physically harmed. Id. See, also, State v. Mitchell (Sept 7, 1995), Cuyahoga App. No. 56575. It is sufficient if physical harm was attempted or threatened. Id.
 {¶ 19} At trial, the victim testified to waking up and finding the defendant inside her house while she was home alone. She testified that the defendant asked her sexually explicit questions, while unbuckling his pants. Defendant's words and actions conveyed a clear threat to sexually assault the victim. Therefore, the trial court's finding that defendant was guilty of aggravated burglary as defined in the statute is not against the manifest weight of the evidence.
 {¶ 20} Defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MELODY J. STEWART, J., CONCUR
[1] The rationale for this is that regardless of whether the offender is bluffing or in earnest, the victim may be impelled to violence to counter what he believes to be a real threat. *Page 1