[Cite as *State v. Brown*, 2025-Ohio-5854.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                      :

    Plaintiff-Appellee,          :

                              No. 114909

    v.                               :

DONTELLE BROWN,                     :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  December 31, 2025

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-24-691181-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carla B. Neuhauser, Assistant Prosecuting Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Dontelle Brown ("Brown") appeals his convictions and asks this court to reverse his convictions, or in the alternative, remand to the trial court for resentencing on the aggravated-burglary conviction.  We affirm Brown's convictions and sentence.

{¶2} After a jury trial, Brown was found guilty of aggravated burglary, a first-degree felony, in violation of R.C. 2911.11(A)(1); burglary, a second-degree felony, in violation of R.C. 2911.12(A)(1); and intimidation of an attorney, victim, or witness in a criminal case, a third-degree felony, in violation of R.C. 2921.04(B)(1). The jury found Brown not guilty of assault, a first-degree misdemeanor, in violation of R.C. 2903.13(A).

{¶3} Both the State and Brown agreed that the aggravated burglary and burglary counts merged for purposes of sentencing. The State elected to sentence Brown on the aggravated-burglary count. The trial court sentenced Brown to six years in prison for aggravated burglary and three years for intimidation, to be served consecutively, for a total of nine to 12 years in prison pursuant to the Reagan Tokes Law.

## I.   Facts and Procedural History

{¶4} Brown and Y.J., the victim in this case, were in a relationship where Brown was living in Y.J.'s home. Prior to March 29, 2024, Y.J. asked Brown to move out of the home because of his argumentative behavior. On March 28, 2024, Brown and Y.J. decided to spent the weekend together at a motel in Twinsburg. On March 29, 2024, Brown started drinking alcohol and began accusing Y.J. of dating other men. Y.J. decided to leave the motel. Brown took Y.J.'s car and house keys and put them in his pocket. Y.J. tried to call Brown's brother to help calm Brown down. Y.J. stated that it did not work. Brown then pinned Y.J. to the wall so she could not move. Brown then started punching her in the face. Y.J. tried to

leave the motel room, but Brown tripped her, fell to the floor with her, and continued punching her as blood was gushing out of her face and head. Y.J. got off the floor and ran out of the room.

{¶5} Y.J. ran to the motel lobby half-dressed and asked if someone could call 911 because Brown took her cellphone. The motel clerk called 911, and another person retrieved towels to stop the bleeding from Y.J.'s face. Y.J. observed Brown leaving the motel in her car. When the ambulance arrived, they transported Y.J. to the hospital. After Y.J. was treated at the hospital, the police took Y.J. back to the police station where Y.J. waited for her son to pick her up and take her to her Cleveland home.

{¶6} Once home, Y.J.'s other son D.W. decided to stay with her in case Brown showed up to the house. When Y.J. arrived at her home, she discovered that her bedroom was ransacked. Some of her things were taken out of the drawers and thrown onto the floor. She also noticed that some of her things were missing including a necklace, a bank, a gun, bullets, and a computer. Y.J. called the police and reported the missing items. However, the police did not respond to Y.J.'s home.

{¶7} Later on, after going to bed, Y.J. awoke to find Brown standing over her as she lay in her bed. Y.J. screamed and told Brown to leave. Brown refused to leave and told Y.J. to drop the charges against him for assaulting her. Y.J. screamed for D.W. to wake up. Y.J. brandished the gun she had under her pillow as she tried to leave the room. After moving through the hallway and kitchen area

Y.J. ran out the back of the house to her neighbor's home. Meanwhile, D.W. tried to force Brown out of the home. When D.W. pushed Brown through the front door, Brown forced the door into D.W., causing D.W.'s hand to go through the glass. Brown ran from the house and took Y.J.'s car again.

{¶8} On March 31, 2024, the police observed Brown driving Y.J.'s car and arrested him. While Brown was incarcerated, he sent over 40 text messages to Y.J. over the span of three days, urging her to drop the charges against him and threatening to have Y.J. locked up if she did not drop the charges.

{¶9} On April 16, 2024, Brown was indicted by a grand jury on five counts: one count of aggravated burglary, one count of burglary, one count of intimidation of a victim, one count of assault, and one count of domestic violence. On February 18, 2025, the case proceeded to a jury trial on all five counts. On February 19, 2025, the State dismissed the domestic-violence count.

{¶10} On February 20, 2025, the State moved to amend the intimidation count to expand the specified date range of the count from "on or about March 30, 2024," to included March 30, 2024, through April 8, 2024. Brown objected, arguing that it was not in the bill of particulars. The trial court granted the motion and amended the language. Brown also objected to the text messages he sent to Y.J. being admitted into evidence, arguing that they are not relevant. The trial court overruled defense counsel's objections.

{¶11} On February 21, 2025, the jury found Brown guilty of aggravated burglary, burglary, and intimidation of a crime victim. The jury found Brown not

guilty of assault. At sentencing, the State and Brown agreed that the aggravated burglary and burglary counts merged for the purposes of sentencing. On March 4, 2025, the trial court sentenced Brown to nine to 12 years in prison.

{¶12} Brown filed this appeal, assigning seven errors for our review:

1. The verdicts as to Counts One and Two must be reversed due to plain error when the trial court failed to properly instruct the jury under Crim.R. 31(A);

2. The trial court erred when it permitted the State to amend the date of the indictment as to allow the jury to consider facts not presented to the Grand Jury;

3. Defendant-appellant's convictions on Counts One and Two were not supported by sufficient evidence;

4. Defendant-appellant's convictions were against the manifest weight of the evidence;

5. The trial court erred when it permitted introduction of text messages allegedly sent from defendant-appellant to Y.J.;

6. Defendant-appellant received ineffective assistance of counsel; and

7. The trial court erred by sentencing defendant-appellant on allied offenses of similar import.

## II.    Jury Instructions

{¶13} In Brown's first assignment of error, he argues that the trial court violated Crim.R. 31(A) when it failed to properly instruct the jury. Because Brown did not raise his objection to the trial court, he contends that there was plain error when the trial court allowed the jury to consider different predicate offenses to the

charges of aggravated burglary and burglary and different allegations as to the enhancing factors of aggravated burglary.

{¶14} "Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right." *State v. Wiley*, 2022-Ohio-2131, ¶ 24, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "An alleged error is plain error only if the error is obvious and it affected the outcome of the trial." *Id.*, citing *id.* "We take notice of plain error with the 'utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "The burden of demonstrating plain error is on the party asserting the error." *Id.*, citing *Rogers* at *id.*

{¶15} "'[A] defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.'" *State v. Gardner*, 2008-Ohio-2787, ¶ 37, quoting *State v. Adams,* 62 Ohio St.2d 151, 153 (1980). "Jurors must also unanimously agree that the defendant is guilty of the offense charged before the jury can return a guilty verdict." *Id.*, citing Crim.R. 31(A); *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph three of the syllabus. "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Gardner* at ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817 (1999).

{¶16} Brown argues that the language in the indictment allowed for the possibility that any of the offenses could serve as the basis of the enhancement and it was plain error when the trial court allowed the jury to consider different

predicate offenses to the charges of aggravated burglary and burglary. However, "a defendant charged with burglary is not deprived of a unanimous verdict 'simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building.'" *Id.* at ¶ 68, quoting *State v. Suggs*, 209 Conn. 733, 763 (1989).

{¶17} "'Here, the precise nature of [Brown's] intent does not implicate any lack of unanimity regarding his conduct.'" *Id.*, quoting *State v. Marsala*, 43 Conn.App. 527, 539 (1997). There is no suggestion of jury confusion in this case. The jury did not question the meaning of the "any criminal offense" element, and the State did not present evidence of an array of crimes that Brown may have intended to commit in Y.J.'s home.

{¶18} Brown has not demonstrated that plain error occurred. "Plain error is not present unless[,] but for the error complained of, the outcome of the trial would have been different." *Id.*, 2008-Ohio-2787, at ¶ 78, citing *State v. Long*, 53 Ohio St.2d at 91 (1978), paragraph two of the syllabus. "To constitute plain error, there must be (1) an error, i.e., a deviation from a legal rule; (2) that is plain or obvious; and (3) that affected substantial rights, i.e., affected the outcome of the trial." *State v. Mallory*, 2022-Ohio-3667, ¶ 67 (8th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27. ""Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"" *Id.*, quoting *State v. Mallory*, 2018-Ohio-1846, ¶ 17 (8th Dist.), quoting *Long* at paragraph two of the syllabus. "The 'extremely

high burden' of demonstrating plain error is on the defendant." *Id.*, quoting *State v. Chapman*, 2019-Ohio-1452, ¶ 20 (8th Dist.).

{¶19} Although Brown relies extensively on the holdings of *Gardner*, he has not asserted that the violation of Crim.R. 31 amounted to plain error. Under such circumstances, this court has no obligation to fashion a plain-error argument on Brown's behalf and then evaluate our own construction. *See, e.g., O'Donnell v. N.E. Ohio Neighborhood Health Servs.*, 2020-Ohio-1609, ¶ 87 (8th Dist.). The witnesses' testimonies were sufficient to establish the element of aggravated burglary.

{¶20} Therefore, Brown's first assignment of error is overruled.

### III. Date Amendment in the Indictment

{¶21} In Brown's second assignment of error, he argues that the court erred when it allowed for the amendment of the date of the indictment on Count 3. On February 20, 2025, the State moved to amend the intimidation count to expand the specified date range of the count from "on or about March 30, 2024," to include March 30, 2024, through April 8, 2024. Brown objected, arguing that it was not in the bill of particulars. The trial court granted the motion and amended the language.

{¶22} The Supreme Court has previously explained:

"Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other

than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution."

*State v. Ketchum*, 2021-Ohio-1583, ¶ 18 (8th Dist.), quoting *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985).

{¶23} "To that end, this court has observed that '[t]he State's only responsibility is to present proof of offenses alleged in the indictment, *reasonably* within the time frame alleged.' (Emphasis added.)" *Id.*, quoting *State v. Shafer*, 2002-Ohio-6632, ¶ 17 (8th Dist.). Crim.R. 7(D) explains when an indictment or bill of particulars may be amended and in relevant part provides:

> "The court may at any time before, during, or after a trial amend the indictment * * * or bill of particulars in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

*Id.* at ¶ 20, quoting Crim.R. 7(D).

{¶24} The changing of the date ranges from "on or about March 30, 2024" to include March 30, 2024, through April 8, 2024, did not change the name or identify of the crime charged. Brown asserts the holding in *State v. Vitale*, 96 Ohio App.3d 695 (8th Dist. 1994), as support of his claim. Brown's reliance on *Vitale* is misplaced. In *Vitale*, the appellant appealed from his conviction for theft following a bench trial. This case arose out of a dispute over defendant's failure to pay for car repairs that he claimed were not properly performed. *Id.* at 697. The defendant was indicted for a theft alleged to have occurred on June 14, 1991, when he took his

car from the mechanic. "At the conclusion of the [S]tate's case, the [S]tate moved to amend the indictment to show the theft offense was committed from 'June 14, 1991, through June 21, 1991 inclusive.' Over objection, at the conclusion of all the evidence, the court allowed the amendment. *Id*. at 699.

{¶25} The State changed the date on the original indictment to include the date the appellant's car was found at his home, not just the date he drove the car from the mechanic. The appellant was convicted for theft that the jury found occurred on June 21, 1991, at the alleged victim's house, not the mechanic shop. The court stated that the appellant "was convicted of an offense on evidence that was never presented to the grand jury." *Id*. at 700. As a result, the court decided that "when the identity of the crime is changed, it does not matter whether the defendant can show prejudice." *Id*. at 701, citing *State v. Dilley*, 47 Ohio St.3d 20 (1989). The court held "[s]ince the state, by amendment to the indictment herein, changed the identity of the crime, the trial court erred in permitting the amendment." *Id*. at 702.

{¶26} In our instant case, the State did not change the identity of the crime for which Brown was accused of committing. The date of the offense is not an essential element of the crime. Brown attempted to intimidate Y.J. from pursuing criminal charges when he broke into her home and when he sent text messages to her from jail. These events occurred within the stated date range.

{¶27} Therefore, Brown's second assignment of error is overruled.

## IV. Sufficient Evidence

{¶28} In Brown's third assignment of error, he argues that his convictions for aggravated burglary and burglary were not supported by sufficient evidence. "'A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.'" *State v. Carter*, 2024-Ohio-2166, ¶ 26 (8th Dist.), quoting *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.) citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt." *Id*. at ¶ 26, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶29} "When making a sufficiency determination, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction." *Carter* at ¶ 27, citing *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at *id*. "Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law." *Id*., citing *Parker* at ¶ 7.

{¶30} Brown's convictions for aggravated burglary and burglary merged for the purpose of sentencing. "'[W]ith merged offenses, if there is sufficient evidence to support the offense on which the state elected to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence or the manifest weight of the evidence on the merged counts because any error would constitute harmless error.'" *State v. Cook*, 2024-Ohio-2966, ¶ 59 (5th Dist.), citing *State v. Harris*, 2024-Ohio-2709, ¶ 59 (8th Dist.). Thus, we will not review the sufficiency or the manifest weight of the evidence on the burglary count.

{¶31} Brown was convicted of aggravated burglary, in violation of R.C. 2911.11(A)(1). R.C. 2911.11(A)(1) defines aggravated burglary as follows:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

{¶32} Brown argues that in order for his conviction to be sufficient there must be a showing that he committed trespass through force, stealth, or deception. Brown contends that there was no specific testimony of how he gained access to the residence or that all the doors to Y.J.'s home were locked or closed. Y.J. testified that she told Brown he used the keys he stole from her at the motel to gain access to her home.

{¶33} Y.J. testified that while she and Brown were at the motel, Brown took her keys and put them in his pocket. Later that evening, Brown entered Y.J.'s home without permission. R.C. 2911.21(A)(1), the statute that defines criminal trespass, states, in pertinent part, that "[n]o person, without privilege to do so, shall do any of the following: Knowingly enter or remain on the land or premises of another." "Ohio courts have defined 'stealth' as 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Stewart*, 2006-Ohio-1071, ¶ 18 (8th Dist.), quoting *State v. Sims*, 2005-Ohio-1978, ¶ 5 (8th Dist.).

{¶34} Brown's assertions regarding whether the doors were locked or that there was no testimony on how he gained access to the home are misplaced. Whether the doors were unlocked or locked does not change the sufficiency of the evidence. "'This Court has held that opening an unlocked door can be sufficient to show force under the burglary statutes.'" *State v. Evett*, 2015-Ohio-2722, ¶ 8 (9th Dist.), quoting *State v. Shelly*, 2011-Ohio-4301, ¶ 12 (9th Dist.); s*ee also State v. Primous*, 2020-Ohio-912, ¶ 29 (8th Dist.), quoting *State v. Johnson*, 2012-Ohio-3812, ¶ 16 (8th Dist.) ("'Ohio law has long held that the force element for an aggravated burglary charge is established through the opening of a closed but unlocked door.'"). Although we do not know whether the doors were unlocked or if Brown unlocked the doors with the keys he had taken from Y.J., there is sufficient

evidence to demonstrate that he entered the property, without permission, by force or stealth.

{¶35} Additionally, when Brown entered the home, he did not wake D.W., who was sleeping in the front room of Y.J.'s home, demonstrating that he used stealth to enter the home. "'Stealth' is not defined in the Revised Code, so we consider its plain and ordinary meaning. In determining the plain and ordinary meaning of a word, courts may look to dictionary definitions of the word as well as the 'meaning that the word[] ha[s] acquired when * * * used in case law.'" *State v. Bertram*, 2023-Ohio-1456, ¶ 13, quoting *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21.

{¶36} "Merriam-Webster defines 'stealth' as 'intended not to attract attention.'" *Id.*, quoting *Merriam-Webster's Collegiate Dictionary* 1221 (11th Ed.2003). "And 'stealth' has been defined in caselaw as "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission."'" *Id.*, quoting *State v. Ward*, 85 Ohio App.3d 537, 540 (3d Dist. 1993), quoting *State v. Lane*, 50 Ohio App.3d 41 (10th Dist. 1976).

{¶37} Brown further argues that he did not make any specific threat to commit physical harm to Y.J. However, the record reveals that Brown, without permission, entered into Y.J.'s home in the middle of the night. She awoke to find him standing over her while she was in bed. Y.J. screamed for Brown to leave, he

refused, and he told her, "[Y]ou better not go down there. Just don't go down there to press charges on me." Tr. 358-359.

**{¶38}** "In order for [Brown] to be found guilty of aggravated burglary, the State must show that [Brown] intended to forcefully trespass into Y.J.'s home and, then, that [Brown] had the purpose, at some point during that trespass, to inflict, or attempt to threaten to inflict physical harm upon Y.J." *State v. Walker*, 2007-Ohio-4047, ¶ 18 (8th Dist.), citing *State v. Dobbins*, 2004-Ohio-5738 (8th Dist.). "Aggravated burglary does not require actual physical harm, and the victim need not show that she was actually physically harmed." *Id.*, citing *id.* "It is sufficient if physical harm was attempted or threatened." *Id.*, citing *id.*

**{¶39}** Given the facts that earlier in the evening Brown attacked Y.J., hitting and punching her in the face so hard that blood was gushing resulting in Y.J. having to go to the hospital and receiving ten stitches, it was reasonable for Y.J. to believe that Brown would physically harm her again. Y.J.'s reasonable fear that Brown could harm her is sufficient to satisfy the harm element. *Id.* at ¶ 16 ("The fact that defendant did not actually touch the victim does not vitiate the reasonable belief held by her that defendant was about to cause her serious physical harm.").

**{¶40}** Therefore, there was sufficient evidence to convict Brown of aggravated burglary. Brown's third assignment of error is overruled.

## V. Manifest Weight of the Evidence

{¶41} In Brown's fourth assignment of error, he argues that his convictions were against the manifest weight of the evidence. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 2021-Ohio-856, ¶ 32 (8th Dist.), quoting *Thompkins*, 78 Ohio St.3d at 386. Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387.

{¶42} In reviewing a manifest-weight claim, an appellate court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Id.*, quoting *id.*

{¶43} Brown argues that there was no testimony that anyone witnessed him using Y.J.'s keys to enter her home and that he attempted to physically harm her. Thus, his convictions are against the manifest weight of the evidence. Upon review of the record, we conclude that the greater weight of the evidence demonstrates that Brown did not have permission to enter Y.J.'s home on the night of the incident. Brown does not argue that he was not in the home, but rather no one saw

how he entered. However, he entered the home without privilege to do so. *See State v. Shurelds*, 2025-Ohio-2638, ¶ 31 (3d Dist.).

**{¶44}** Additionally, Y.J. testified that she was fearful that Brown would harm her, which is why she slept with a gun under her pillow. After Brown repeatedly punched and hit Y.J. in the face, resulting in her receiving treatment at the hospital, Brown entered Y.J.'s home, stood over her in bed, and told her not to press charges against him. Y.J. had a reasonable fear that Brown would hurt her again. "It is within the province of the jury to determine the credibility of the witnesses. In considering the foregoing evidence, 'the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial.'" *Id.* at ¶ 25, quoting *State v. Erickson*, 2015-Ohio-2086, ¶ 42 (12th Dist.). Accordingly, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Brown's aggravated-burglary conviction must be reversed and a new trial ordered.

**{¶45}** Therefore, Brown's fourth assignment of error is overruled.

## VI.    Admitted Evidence

**{¶46}** In Brown's fifth assignment of error, he argues that the trial court erred when it admitted his text messages to Y.J. into evidence. While Brown was incarcerated for three days, he sent Y.J. over 40 text messages, threatening to have Y.J. incarcerated if she did not drop the charges against him. The trial court, over Brown's objections at trial, admitted the text messages into evidence as evidence of intimidation of Y.J. Brown argues that the admission of the text messages into

evidence were improper propensity evidence and cites the decision in *State v. Echols*, 2024-Ohio-5088, to support his assertion that the text messages were proof of the same type of bad acts, i.e., intimidation. Brown's argument was made prior to the amendment of the indictment and was objected to.

{¶47} Brown's assertion that the decision in *Echols* supports his argument is misplaced. In *Echols*, the defendant, while incarcerated, sent a letter that was returned to the prison unopened. The letter contained instructions on how the recipient was supposed to create a false alibi for the defendant and stated that a witness, testifying against him, "had to go." The letter also contained names, birthdates, and social security numbers of the victims that survived the shooting, with instructions for the recipient to use the information to help the defendant. The State admitted a photograph of the letter as evidence of intimidation, and the defendant argued that the photograph was more prejudicial than probative since it could not be authenticated. The defendant was convicted, and the First District Court of Appeals affirmed his conviction, finding that the witness-intimidation evidence had been properly admitted showing his consciousness of guilt.

{¶48} In *Echols*, the defendant challenged the admission of this evidence. He argued that the trial court should have analyzed the evidence as "other acts" evidence under Evid.R. 404(B) and follow the analytical framework for such evidence that this court outlined in *State v. Hartman*, 2020-Ohio-4440. The Supreme Court agreed that the witness-intimidation evidence at issue constitutes

other-acts evidence under Evid.R. 404(B)(1), but found no error in the admission of this evidence.

{¶49} In this case, Brown argues that the text messages are directly related to three of the offenses: intimidation, aggravated burglary, and burglary. Like in *Echols*, 2024-Ohio-5088, the State attempted to show Brown's several acts to intimidate. However, the acts in *Echols* were different in nature, but here the acts are the same, text messages, and therefore prejudicial. Brown argues that the jury, if they had doubts, would likely believe that Brown committed intimidation at any point once the text messages were admitted.

{¶50} "Evidence of other acts is inadmissible to show the defendant's propensity or inclination to commit an offense." *State v. Boyd*, 1993 Ohio App. LEXIS 3348, *12 (8th Dist. July 1, 1993). Evid.R. 404(B) states, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." But the record reveals that the text messages were not presented by the State for any of these purposes. The State argues that the text messages were properly authenticated, relevant, and admissible.

{¶51} After this court's review, we determine the text messages are not hearsay evidence to be analyzed under Evid.R. 404(B). "Courts have held that photographs of text messages sent from a defendant are not hearsay, but instead qualify as a party-opponent admission under Evid.R. 801(D)(2) as long as the statements are properly authenticated." *State v. Pyles*, 2018-Ohio-4034, ¶ 49 (4th

Dist.). *See State v. Bickerstaff*, 2015-Ohio-4014, ¶ 15 (11th Dist.); *State v. Shaw*, 2013-Ohio-5292, ¶ 43 (7th Dist.). "'Generally, in cases involving electronic print media, i.e., texts, instant messaging, and emails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages.'" *Id.*, quoting *State v. Davis*, 2016-Ohio-1166, ¶ 19 (12th Dist.), citing *State v. Roseberry*, 2011-Ohio-5921, ¶ 75 (8th Dist.). *See also State v. Thompson*, 2016-Ohio-7521, ¶ 59. "Therefore, statements from text messages are properly authenticated when the recipient of the messages identifies the messages as coming from the defendant." *Id.*

**{¶52}** Brown was convicted of intimidation of an attorney, victim, or witness in a criminal case, which is prohibited under R.C. 2921.04, which states:

> (B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:
>
> > (1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding.

**{¶53}** At trial, Y.J. read some of the text messages from Brown and authenticated them. Tr. 381. One of the messages Y.J. read at trial stated:

> I ain't about to argue with you no more. I'm staying in Akron now. And if you think I'm about to see you in court on the stand telling on me fine. I'll press charges on you too. It was a camera in our room that recorded it all. And I got it on tape. Two times. So just chill boo. I still care about you. Yea no. yea. It was on tape. See you court. So it's cool, yea. I recorded it. So we both go to jail. I'll give it to Twanna Monday.

Tr. 383.

{¶54} Another one stated:

See you again in the next life. I'm not about to do this bickering with you. Okay. Just drop these weak ass charges. Shit ain't real at all. I did not take no car. That's my car. And that's it. So just get over it. You had a ni**a trying to take care of you. And you know it. I'm not about to tell on you. I ain't no snitch. All you got to do is tell the prosecution to let this shit go away because I know you still love me baby and I love you too. I'm not forcing you to do nothing. Follow your heart. We had a really good time at the hotel. I really meant it when I said I cared about you. And I really want you to know that. We sang and cried together. It's only two weak ass cases. I can't really — I can't suffer for them. I'm okay for real.

Tr. 384.

{¶55} Y.J. read several messages Brown sent to her over the course of the next several days. In those messages, Brown asked Y.J. to lie and say that he did not assault her. He also threatened to harm himself. Tr. 385-388. The text messages constitute substantial evidence that Brown committed an unlawful threat to commit any offense or calumny against any person. *Id.* at ¶ 60.

{¶56} Therefore Brown's fifth assignment is overruled.

## VII. Ineffective Assistance of Counsel

{¶57} In Brown's sixth assignment of error, he argues that he received ineffective assistance of counsel when his trial counsel failed to argue the sufficiency of the evidence of force, stealth, or deception under the aggravated burglary and burglary counts. "The Sixth Amendment of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal

proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that 'the right to counsel is the right to effective assistance of counsel.'" *State v. Farraj*, 2025-Ohio-2778, ¶ 22 (8th Dist.), quoting *Strickland v. Washington*, 466 U.S. 668 (1984).

> To succeed on a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

*Id.* at *id.*

**{¶58}** "Our review of ineffective assistance of counsel claims requires us to give great deference to counsel's performance." *Id.*, citing *id.* at 689. "'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Id.*, quoting *State v. Pawlak*, 2014-Ohio-2175, ¶ 69 (8th Dist.). "Finally, we are reminded that in evaluating a claim of ineffective assistance of counsel, there is a strong presumption that counsel's conduct in question fell within a wide range of reasonable professional assistance." *State v. Perry*, 2018-Ohio-487, ¶ 27 (8th Dist.), citing *State v. Singleton*, 2013-Ohio-1440, ¶ 67 (8th Dist.). "As a result, trial tactics and strategies do not constitute a denial of effective assistance of counsel." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 48 (1980).

**{¶59}** We have previously determined that there was sufficient evidence to convict Brown of aggravated burglary and burglary. Brown must demonstrate that his trial counsel was deficient in some aspect of the representation and has failed

to do so because Brown entered Y.J.'s home unlawfully without the privilege of the owner.

{¶60} Therefore, Brown's sixth assignment of error is overruled.

## VIII. Allied Offenses of Similar Import

{¶61} In Brown's seventh assignment of error, he argues that the trial court erred by sentencing him on allied offenses of similar import. Specifically, he contends that the trial court erred by not merging the aggravated-burglary count with the intimidation count. Brown did not object at trial, so we review for plain error.

{¶62} "Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right." *Wiley*, 2022-Ohio-2131, at ¶ 24, citing *Rogers*, 2015-Ohio-2459, at ¶ 22. "An alleged error is plain error only if the error is obvious and it affected the outcome of the trial." *Id.*, citing *id.* "We take notice of plain error with the 'utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *Long*, 53 Ohio St.2d at paragraph three of the syllabus. "The burden of demonstrating plain error is on the party asserting the error." *Id.*, citing *Rogers* at *id.*

{¶63} "Crim.R. 52 affords appellate courts 'limited power' to correct plain errors that occurred during the trial court proceeding." *State v. Pugh*, 2022-Ohio-3038, ¶ 18 (8th Dist.). "Crim.R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the

attention of the court. . . .  An appellate court has discretion to notice plain error and therefore is not required to correct it." (Cleaned up).  *Id.*

{¶64} "Likewise, in the context of allied offenses of similar import, the Supreme Court of Ohio has held:

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice.

*Pugh* at ¶ 20, quoting *Rogers*, 2015-Ohio-2459 at ¶ 3.

{¶65} "The law require[s] [the defendant] to demonstrate a reasonable probability that his convictions constituted allied offenses of similar import.'" *Id.*, quoting *id.* at ¶ 29.

> "[A]bsent the accused's showing that there was a reasonable probability that the convictions are in fact for allied offenses of similar import committed with the same conduct and without a separate animus, 'the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.'"

*Id.*, quoting *State v. Williams*, 2016-Ohio-7658, ¶ 25, quoting *Rogers,* 2015-Ohio-2459, at ¶ 3.

{¶66} Brown's "burden of proving entitlement to relief for plain error should not be too easy." (Cleaned up.)  *Pugh* 2022-Ohio-3038, at ¶ 21.  Even if the Brown's burden is satisfied, the Supreme Court "has admonished appellate courts to notice plain error with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Cleaned up.)  *Id.*  "Therefore, an appellate court may not simply substitute its judgment for that of a trial court

under the guise of plain error, which affords limited power. An appellate court must be careful not to engage in an unwarranted expansion of Crim.R. 52(B)." *Id.*, citing *State v. Perry*, 2004-Ohio-297, ¶ 9, 20. Even when claims of serious error are made, when no objection was raised at trial, expanding Crim.R. 52(B) "would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." (Cleaned up.) *Id.* "'[O]ur holdings should foster rather than thwart judicial economy by providing incentives * * * for the defendant to raise all errors in the trial court — where, in many cases, such errors can be easily corrected.'" *Id.*, quoting *Perry* at ¶ 23.

{¶67} "When considering whether two offenses are allied offenses of similar import, as a practical matter, courts must consider '[t]he conduct, the animus, and the import.'" *Pugh* at ¶ 23, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 31. Because a plain-error challenge is being raised, Brown is required to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error. *Id.*, citing *Rogers* at ¶ 3.

{¶68} Brown was convicted of aggravated burglary, in violation of R.C. 2911.11(A)(1), and intimidation, in violation of R.C. 2921.04(B)(1). Brown contends that the burglary was committed for the purpose of intimidating Y.J., so

the conduct was committed without a separate animus. However, the State argues that the two offenses were committed with separate and identifiable harm. The State further contends that the burglary was committed with the purpose of inflicting or threatening physical harm while the intimidation was committed by trying to coerce Y.J. to drop the criminal charges against Brown. The State proffers the text messages Brown sent while incarcerated as evidence that he was using intimidation and threats of arrest if Y.J. did not comply with his demands.

{¶69} "'[O]ffenses are not offenses of similar import if the offender's conduct constitutes offenses against different victims or if the harm that results from each offense is separate and identifiable.'" *Pugh* 2022-Ohio-3038, at ¶ 25, quoting *Rogers* 2015-Ohio-2459, at ¶ 4, citing *Ruff* at ¶ 23. The harm that resulted from Brown burglarizing Y.J.'s home was separate and identifiable from the harm that Brown caused by sending threatening text messages. From following the mandates in *Ruff*, we cannot conclude that the trial court committed plain error by failing to merge Brown's aggravated-robbery and intimidation convictions.

{¶70} Therefore, Brown's seventh assignment of error is overruled.

{¶71} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

WILLIAM A. KLATT, J.,* CONCURS;
MICHELLE J. SHEEHAN, P.J., CONCURS IN JUDGMENT ONLY


(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)